IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA HAWKINS, TYLER MOE,
and PHILLIP GEISLER,

                        Plaintiffs,
     v.                                                  OPINION and ORDER

LUTHERAN SOCIAL SERVICES OF WISCONSIN               20-cv-352-jdp
AND UPPER MICHIGAN, INC., COMMUNITY
TRANSITION CENTER, and EAU CLAIRE COUNTY,

                        Defendants.

---

       This is a proposed class action challenging a pretrial bond release program in Eau Claire County, Wisconsin. Plaintiffs say that the county created the program, the Community Transition Center runs the program, and Lutheran Social Services of Wisconsin runs the center. Each of the named plaintiffs participated in the program, and they ask to represent a class of all others who have participated in the program since 2014. They contend that the program subjected them to unreasonable searches, forced them to incriminate themselves, allowed defendants to disclose private information, imposed excessive bail conditions on them, denied them due process, and impermissibly delegated judicial authority to other entities.

       Plaintiffs move to certify all of their claims for class treatment under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Dkt. 37. The court will deny the motion without prejudice because plaintiffs haven't provided enough information to determine whether their claims meet the requirements of Rule 23. But plaintiffs may have an opportunity to file a renewed motion that addresses the court's concerns.

ANALYSIS

A. **Legal standard**

Plaintiffs propose the following class: "[A]ll persons who were referred by Eau Claire County Circuit Court to [Community Transition Center's] testing program as a condition of their pre-conviction, pre-trial, bond since April 17, 2014." Dkt. 38, at 25. A proposed class may be certified under Rule 23 if it meets the following requirements: (1) the scope of the class and the class claims are clearly defined, Fed. R. Civ. P. 23(c)(1)(B); (2) the class is sufficiently numerous, includes common questions of law or fact, and is adequately represented by named plaintiffs who have claims typical of the class, Fed. R. Civ. P. 23(a); (3) class counsel is adequate, Fed. R. Civ. P. 23(g)(1); and (4) the class meets the requirements of at least one of the types of class actions listed in Rule 23(b).

Plaintiffs seek to represent classes under both Rule 23(b)(2) and (3). Rule 23(b)(2) applies when the plaintiffs are seeking injunctive or declaratory relief and "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Under Rule 23(b)(3), the plaintiffs must show that common questions of law or fact "predominate" over individual ones and that a class action is "superior" to other methods of adjudicating the case.

B. **Requirement to identify the class claims**

The court can't determine whether plaintiffs meet many of the Rule 23 requirements because plaintiffs haven't provided enough information about their claims. In contending that they meet the requirements for class certification, plaintiffs say that they are challenging the legality of the bond program, and they cite cases from this court and the court of appeals approving class actions that involved challenges to policies. *See Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015); *Blihovde v. St. Croix Cty., Wis.*,

2

219 F.R.D. 607 (W.D. Wis. 2003). But plaintiffs must do more than point to a policy or set of policies. *See McFields v. Dart*, 982 F.3d 511, 516–17 (7th Cir. 2020) (upholding denial of class certification motion despite challenge to policy); *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 608–09 (7th Cir. 2021) (same). Rather, they must identify specific issues central to the resolution of their claims that can be decided on a class-wide basis. *Wal–Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011).

Determining whether class certification is appropriate "requires a precise understanding of the nature of the plaintiffs' claims." *Phillips*, 828 F.3d at 552. *See also Howard*, 989 F.3d at 607 ("[A]n evaluation of predominance begins with the elements of the underlying claim."). The purpose of this inquiry isn't to determine whether plaintiffs are likely to succeed on their claims, but only to show whether a class action is the appropriate vehicle for deciding the plaintiffs' claims. For example, in *Howard*, the court analyzed the elements of the plaintiffs' claims and assessed whether the plaintiffs had identified elements that could be resolved across the class. 989 F.3d at 600–05.

Plaintiffs have skipped this basic step. Plaintiffs set forth six claims in their complaint and motion, but the claims are ill-defined, and plaintiffs do not discuss the elements of their claims, much less explain how they will be able to prove those elements with the same evidence for the entire class. *See Phillips*, 828 F.3d at 553 ("The critical point is the need for conduct common to members of the class . . . . The common question (or common questions) . . . must resolve an issue that is central to the validity of each one of the claims in one stroke." (internal quotation marks and citations omitted)). Instead, plaintiffs' briefs group all their claims together and treat them as one broad challenge to the bond release program. But this looks at plaintiffs' claims at too high a level of generality and fails to show that their claims present

3

common questions or that the named plaintiffs are adequate class representatives with typical claims. The court will discuss each claim identified in the complaint and explain why more information is needed about the scope and nature of the claims before the court can determine whether plaintiffs can meet the requirements of Rule 23.

### 1. Claim one

Plaintiffs' first claim is that the program subjected them to unreasonable searches in violation of the Fourth Amendment and the Wisconsin Constitution by requiring them to take drug tests. But plaintiffs acknowledge that not all of them were required to take such tests. And plaintiffs provide little information about the circumstances under which drug tests were required. Even the cases that plaintiffs cite recognize that drug testing may be a valid condition of release under some circumstances. *See United States v. Scott*, 450 F.3d 863 (9th Cir. 2006); *State v. Wilcenski*, 2013 WI App 21, 346 Wis. 2d 145, 827 N.W.2d 642. Plaintiffs must explain their Fourth Amendment theory and how it can be decided across the class.

### 2. Claim two

Plaintiffs' second claim is that participants are required to comply with "testing and programming conditions," in violation of the right to be free from self-incrimination under the Fifth Amendment and the Wisconsin Constitution. Dkt. 1, at 8. In their opening brief, plaintiffs further explain that the program requires participants to "sign a release that permits [the center] to turn over confidential testing and addiction treatment directly to the district attorney and police," which may result in "new criminal charges" and additional time in jail. Dkt. 38, at 5.

This claim also raises questions that plaintiffs don't answer, even after defendants discussed some of the questions in their opposition briefs. As an initial matter, plaintiffs don't

precisely explain their Fifth Amendment theory. Fifth Amendment protections are generally limited to compelled *statements*, and plaintiffs don't clearly identify any statements that the proposed class members were required to provide. Drug test results themselves are not considered testimonial under the Fifth Amendment. *See Schmerber v. California*, 384 U.S. 757, 761 (1966) ("[T]he privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and . . . the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."). If some statements were compelled in some circumstances, that would seem to raise an individualized rather than a common question.

Plaintiffs also don't explain when they believe the alleged Fifth Amendment violation occurred. As defendants point out, "a self-incrimination violation occurs (if at all) when a suspect's unlawfully obtained inculpatory statement is used against him in a criminal case." *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). This means that class members could not bring a claim simply because they were required to provide incriminating information; rather, the class would have to show that the information was used in a criminal proceeding. That, in turn, raises questions under *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits § 1983 claims that necessarily imply the invalidity of a conviction or sentence. The court of appeals has held that *Heck* categorically bars any Fifth Amendment claim involving a proceeding that resulted in a conviction until the conviction is overturned. *Johnson*, 900 F.3d at 439. So any class for this claim would be limited to program participants who were involved in criminal proceedings where compelled statements were used against the participants, but the participants either were not convicted or their convictions were later overturned. *See Best v. City of Portland,* 554 F.3d 698, 702–03 (7th Cir. 2009) (plaintiffs may bring Fifth Amendment

5

claim for statements used "at an arraignment, probable cause hearing, and bail hearing," even if charges were later dismissed). Plaintiffs don't explain how they would identify such a class, why they believe that the class would be sufficiently numerous to justify class certification, or more generally how this claim could be resolved with common evidence.

### 3. Claim three

Plaintiffs' third claim is that defendants shared "testing information and results with the District Attorney's office," in violation of the constitutional right to privacy. Dkt. 1, at 9. In their opening brief, plaintiffs elaborate on this claim, stating that defendants require participants to waive their privacy rights in their "mental health and addiction treatment records," that defendants share "testing results and programming information" with the district attorney's office, and that defendants sometimes file the information "with the clerk of court's office as a public record." Dkt. 38, at 6. Plaintiffs also say that defendants are violating "42 CFR Part 2" and Wis. Stat. § 51.30.

Plaintiffs don't discuss the elements of any of the legal theories they identify, they only vaguely describe the information they believe is protected, and they don't explain why they believe that the disclosed information is sufficiently similar across the class so that any violations can be determined collectively. Without a more specific description of the privacy claims, the court can't determine whether they raise common questions.

### 4. Claim four

Plaintiffs' fourth claim is that the program "amounts to excessive bail and cruel and unusual punishment," in violation of the Eighth Amendment and the Wisconsin Constitution. Dkt. 1, at 9. This claim is also ill-defined. In their complaint, plaintiffs describe the unlawful behavior as the center's "unilateral discretion, without judicial oversight, to set testing and

programming conditions, to modify those, to impose sanctions, to send to jail as a sanction, and to terminate from the program thereby resulting in the participant being in violation of their bond and subject to additional charges and penalties." *Id.* This description suggests that the problem is that the program gives defendants too much control over the participants without a judicial check. But in their opening brief, plaintiffs say that defendants violated the Eighth Amendment by requiring participants to "waive constitutionally protected rights in order to be released" and "using the information impermissibly obtained from the pretrial defendant so as to jail him as a sanction, or subject him to further criminal charges." Dkt. 38, at 6. This suggests that the problem is the conditions themselves rather than the amount of discretion that defendants have.

Plaintiffs must more fully describe their legal theory, the specific conduct they believe is unlawful, and how they will be able to prove the elements of this claim with evidence that is common to the class. Plaintiffs' summary of this claim includes different aspects of the program, and, as plaintiffs acknowledge, not every aspect of the program applies to every class member. Are plaintiffs contending that all the conditions collectively violate the Eighth Amendment, or that each condition is an independent violation? Either contention could have implications for class certification. If plaintiffs are contending that the cumulative effect of the conditions is to violate the Eighth Amendment, this could exclude many proposed class members who were not subjected to all of the conditions; if plaintiffs are contending that each condition is a separate violation, that could require the creation of subclasses.

Also, are plaintiffs contending that the conditions are excessive regardless of the circumstances of the class member? *See United States v. Arzberger*, 592 F. Supp. 2d 590, 606 (S.D.N.Y. 2008) (whether bail conditions are "excessive cannot be determined without an

7

individualized determination of [the suspect's] characteristics"). If so, what is their legal basis for that contention? If not, how can the claim be decided on a class-wide basis?

### 5. Claim five

Plaintiffs' fifth claim is that the program subjects participants to "bond conditions, modifications, and sanctions without due process." Dkt. 1, at 10. In their opening brief, plaintiffs elaborate on the claim, alleging that the program "remove[s] the judge's discretion as to testing and sanctioning a pretrial defendant on an individualized basis" and it gives that discretion to defendants. Dkt, 38, at 6. Again, plaintiffs' description of the claim is too vague to allow the court to determine whether there are common questions.

Plaintiffs don't clearly explain what their due process theory is. Any claim under the Due Process Clause requires the plaintiff to show that the defendant deprived the plaintiff of a protected interest in liberty or property without giving the plaintiff adequate procedural protections. *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002). Plaintiffs don't discuss the elements of a due process claim, they don't identify specifically all the deprivations they are challenging or the procedural protections they were entitled to but did not receive, and they don't explain how this claim can be decided across the class despite admitted differences in the deprivations experienced by the proposed class members. Plaintiffs will need to address all of those issues in a renewed motion for class certification.

### 6. Claim six

Plaintiffs' sixth and final claim is that the program delegates judicial authority to other entities, in violation of the Wisconsin Constitution and Wis. Stat. § 969.08. A threshold question is whether this claim could be certified as a damages class under Rule 23(b)(3). Plaintiffs identify no authority that would authorize an award of damages under the state

constitution or § 969.08. *See Kowald v. Columbia Cty.*, No. 18-cv-582-jdp, 2019 WL 2646583, at *3 (W.D. Wis. June 27, 2019) ("The state constitution does not authorize suits for money damages except in the context of a takings claim.").

Another potential issue is that § 969.08 is a criminal procedure statute. Plaintiffs don't identify a legal basis for using the statute to obtain relief in a civil case. Although the court's primary concern now is identifying common and individual questions, the court would be reluctant to certify a class on a claim that didn't have a legal basis. So plaintiffs should explain why they believe that the Wisconsin Constitution and § 969.08 gives them a right to seek damages and injunctive relief in a civil case. Plaintiffs should also identify the specific conduct by defendants that violates these state laws and identify the specific issues on this claim that can be decided across the class.

### 7. Plaintiffs' proposed subclasses

In their reply brief, plaintiffs offer to create subclasses based on different potential injuries: (A) all those who signed a waiver; (B) all those had "an increased testing sanction"; (C) all those subjected to disclosure of their "confidential information"; (D) all those who "had a jail sanction"; and (E) all those who "had a bond jumping sanction." Dkt. 66, at 30. But plaintiffs don't explain how any of those proposed subclasses support class certification. Plaintiffs don't connect the subclasses to any of their class claims or explain how the subclasses relate to particular constitutional violations. If plaintiffs continue to believe that subclasses will be helpful, they will have to explain how particular subclasses relate to each claim and how they help to resolve any problems with individualized issues that would exist without the subclasses.

The court will give plaintiffs an opportunity to file a renewed motion for class certification that more clearly and precisely identifies their class claims. Among other issues discussed in this opinion, plaintiffs should identify the elements of each claim they are raising and the specific conduct they are challenging on each claim, and they should explain how they will be able to prove the elements of those claims with evidence that is common to the members of the class or an identified subclass. Briefing and resolving a renewed motion for class certification will not leave enough time for the parties to meet the July 19 dispositive motions deadline, so the court will direct plaintiffs to promptly inform the court whether they intend to renew their motion for class certification. If they do, the court will strike the schedule and reset it after resolving the renewed motion.

## C.  Other issues raised by defendants

To help streamline and guide the briefing on plaintiffs' renewed motion, the court will address some of the other issues raised by defendants in their opposition briefs.

### 1.  Issues related to past or future convictions and sentences

Many of the issues defendants raise relate to the effect that plaintiffs' claims could have on their past or future convictions or sentences. Specifically, defendants contend that:

(1) *Heck* bars the claims of any class member who was convicted of bail jumping for violating conditions of release;

(2) *Heck* bars the claim of any class member who was charged with bail jumping for violating conditions of release and later received a higher sentence for another conviction after the bail jumping charge was dismissed and read in during sentencing;

(3) *Heck* bars the claim of class members if they violated the conditions of release and the prosecutor used that information to their detriment in plea negotiations, even if they weren't convicted or charged with bail jumping;

(4) *Wallace v. Kato*, 549 U.S. 384 (2007), requires the court to stay the claims of any class member who has a pending bail-jumping charge because success on those claims would be inconsistent with any future conviction;[1] and

(5) an individualized inquiry will be needed for many class members to determine whether their claims are barred by *Heck* because they received a higher sentence as a result of the unlawful conduct alleged by plaintiffs.

Determining the extent to which *Heck* and *Wallace* affect class certification requires plaintiffs to clarify the scope and nature of their claims, as previously discussed. But if plaintiffs choose to file a renewed motion for class certification, they should address each of the above contentions, explaining claim-by-claim why they believe that *Heck* doesn't apply to any backward-looking claims and why *Wallace* doesn't apply to claims for injunctive relief or claims of any class members with pending criminal cases.

Plaintiffs' primary argument in their reply brief was that *Heck* doesn't apply because plaintiffs aren't challenging any convictions in this case. But *Heck* applies not only to claims involving a direct challenge to a conviction or sentence but also to any claim that "necessarily implies" that a conviction or sentence is invalid. Plaintiffs may not be seeking to overturn a

---

[1] *Wallace* holds that a district court may stay a civil rights claim pending the conclusion of a criminal prosecution if the civil case could undermine a potential conviction. 549 U.S. at 393–94; *see also Haas v. Noordeloos*, 792 F. App'x 405, 406 (7th Cir. 2020) ("To the extent [the plaintiff] wishes to collaterally attack his pending criminal prosecution, the appropriate action here is to stay the civil action until the criminal case or the likelihood of a criminal case is ended.").

conviction or sentence, but they are alleging that the bond release program led to new convictions and higher sentences because it caused bond violations that wouldn't have occurred otherwise and created the basis for additional criminal charges. If that's true, plaintiffs must explain why invalidating the challenged aspects of the program doesn't imply that such convictions or sentences are invalid.

### 2. Class definition

One of the defendants, Lutheran Social Services, objects to plaintiffs' proposed class definition as overbroad because it includes anyone who was "referred" to the bond release program, suggesting that the proposed class includes some people who never participated in the program or suffered any adverse consequences from it. Plaintiffs don't directly respond to this objection, and they should do so in their renewed motion.

### 3. Injuries of class members

The county says that class members who weren't convicted of bail jumping or didn't receive a higher sentence isn't a proper class member because they weren't injured. This argument isn't persuasive. Plaintiffs allege other injuries, including forced drug tests and disclosure of private information. It is another question whether *disparate* injuries preclude class certification. Plaintiffs should address that question in their renewed motion.

### 4. Injunctive relief

The county says that plaintiffs can't maintain a class for injunctive relief under Rule 23(b)(2) because none of the named representatives are currently participating in the program. Plaintiffs say that a state court referred plaintiff Tyler Moe to the program in March 2020, just before this case was filed, Dkt. 45-19, so he had standing to seek injunctive and declaratory relief at the time. Although Moe didn't comply with the requirement to actually enroll in the

program, Moe could have been sanctioned for his failure to participate, so the court agrees with plaintiffs that Moe had a live claim for injunctive relief at the time plaintiffs filed the lawsuit.

But an "actual controversy must be extant at all stages of review." *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). Plaintiffs admit that Moe has been in custody since September 2020, and they don't allege that Moe could be adversely affected in the future by his refusal to participate in the program. So it appears that Moe would not benefit from an injunction or a declaration, which means that his request for such relief is moot. *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (claim is moot when "there is no effectual relief whatever that the court can order"); *Bey v. Haines*, 802 F. App'x 194, 200 (7th Cir. 2020) ("[A] court's power to grant injunctive relief only survives if such relief is actually needed." (internal quotation marks omitted)).

There is an exception to the mootness doctrine in class actions for claims that are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *see also Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). There is a plausible argument that the "inherently transitory" exception should apply in this case, but it would be premature to apply it now because neither side has presented any evidence regarding how long participants tend to be subject to the program. So both sides should address this issue if plaintiffs file a renewed motion for class certification on the issue of injunctive relief.

5. **Changes to the program**

Lutheran Social Services says that plaintiffs can't show common questions because the program has been amended twice since 2014, when the class period begins. This is another

13

issue that may be clarified when plaintiffs provide more information about the nature and scope of their claims. The important question for evaluating commonality isn't simply whether the policy or policies at issues have changed, but whether the changes affect the plaintiffs' theory of the case. So if plaintiffs file a renewed motion, they should address whether any of the amendments affect their legal theory for each claim being asserted, and if so, whether any differences can be addressed through subclasses.

### 6. Adequacy of counsel

Finally, Lutheran Social Services says that plaintiffs' proposed class counsel, Jay Heit, should not be appointed because he represented the named plaintiffs in their criminal cases. Lutheran Social Services contends that counsel's previous representation creates a "conflict," but it doesn't explain why. Courts may find conflicts precluding appointment of class counsel when counsel is concurrently representing other clients with adverse interests to the class. *See* 1 *Newberg on Class Actions* § 3.75 (5th ed. 2011). A court may also find a conflict if counsel has a family or business relationship with a class representative. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 93 (7th Cir. 1977). But Lutheran Social Services cites no authority for the view that previous representation of a client creates a conflict, and Lutheran Services identifies no reason why counsel's previous representation of the named plaintiffs would interfere with counsel's duties to the class as a whole.

Lutheran Social Services says that counsel's previous representation makes him a "material fact witness," Dkt. 65, at 47, but it doesn't identify any relevant testimony that couldn't be obtained from other witnesses. So the court isn't persuaded that counsel is barred from representing the class simply because he represented the named plaintiffs in their criminal cases. And defendants don't identify any other reason for rejecting Heit as class counsel.

In the context of arguing against appointment of class counsel, Lutheran Social Services observes that counsel didn't object to any of the conditions imposed on the named plaintiffs during criminal proceedings. That has little to do with the adequacy of class counsel in this case, but it does raise other questions that could affect whether class certification is appropriate: (1) does a failure to object to conditions during criminal proceedings qualify as a waiver or otherwise preclude the program participant from challenging the condition in a subsequent civil case?; (2) if a class member did object and received an adverse ruling in state court, is the class member precluded from raising the same issue in a civil case; and (3) do either of those issues raise individualized questions affecting class certification? The parties should address those questions if plaintiffs choose to file a renewed motion.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for class certification, Dkt. 37, is DENIED without prejudice.

2. Plaintiffs may have until June 22, 2021, to inform the court whether they intend to file a renewed motion for class certification. If they do, the court will set a briefing schedule, strike the remaining schedule, and reset it after resolving plaintiffs' motion. Otherwise, the court will deny the motion for class certification with prejudice and keep the current schedule.

Entered June 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge